**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANIEL J. CARRILLO,

        Plaintiff,

      vs.                                   No. 1:19-CV-00292-KRS

ANDREW SAUL, Commissioner of
the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Hearing with Supportive Memorandum (Doc. 19), dated August 30, 2019 challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The Commissioner responded to Plaintiff's motion on December 6, 2019 (Doc. 24), and Plaintiff filed a reply brief on December 18, 2019 (Doc. 25). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Plaintiff's motion.

### I. PROCEDURAL POSTURE

On December 22, 2016, Plaintiff filed an initial application for supplemental security income. (*See* Administrative Record ("AR") at 75). Plaintiff alleged that he had become disabled on August 31, 2015, due to trauma and a stress-related disorder, chemical dependence, "bereavement," and ADHD. (*Id.* at 75, 219-20). His application was denied at the initial level on

March 14, 2017 (*id.* at 75-88), and at the reconsideration level on June 21, 2017 (*id.* at 89-104, 110-12). Plaintiff requested a hearing (*id.* at 118-20), which ALJ Stephen Gontis conducted on September 28, 2018 (see *id.* at 32-74). Plaintiff was represented by counsel and testified at the hearing. (*Id.* at 32, 36-66, 72-73). Vocational expert Diane Weber (the "VE") also testified at the hearing. (*Id.* at 66-71).

On November 19, 2018, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 12-22). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 27-28), and on January 28, 2019, the Appeals Council denied the request for review (*id.* at 1-5), which made the ALJ's decision the final decision of the Commissioner. On March 29, 2019, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

## B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment

or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 13-14). He first determined that Plaintiff had not engaged in substantial gainful activity since his onset date. (*Id.* at 14). He then found that Plaintiff suffered from the following severe impairments: a history of traumatic brain injury, posttraumatic stress disorder, attention deficit hyperactivity disorder, depression, and a noncognitive disorder. (*See id.*).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments which met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 15). In so holding, the ALJ found that Plaintiff possessed only moderate limitations in each of the four broad areas of functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself), meaning that Plaintiff did not satisfy the "paragraph B" criteria of sections 12.04, 12.11, and 12.15 of Appendix 1. (*See id.* at 15-16).

Proceeding to the next step, the ALJ reviewed the evidence of record, including medical opinion evidence from consultative psychiatric examiner Paula Hughson, M.D. (the "CE"), medical opinion evidence from two non-examining state agency psychological consultants, and nonmedical opinion evidence from a community support worker. (*See id.* at 17-20). Based on his review of this record evidence, the ALJ concluded that Plaintiff possessed an RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple, routine tasks, make simple work-related decisions, occasionally interact with supervisors, coworkers, and the public, and tolerate few changes in a routine work setting, while his time off-task can be accommodated by normal breaks.

(*Id.* at 16).

Moving to step five, the ALJ cited testimony from the VE, who testified that Plaintiff could perform his past relevant work as an automobile detailer under the aforementioned RFC. (*See id.* at 20-21). The ALJ also cited the VE's testimony that with the aforementioned RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy. (*See id.* at 21-22). On these alternative grounds, the ALJ concluded that Plaintiff's work was not precluded by his RFC and that he was not disabled. (*See id.* at 20-22).

## IV. DISCUSSION

Plaintiff alleges multiple errors concerning the ALJ's step-three and step-four analyses, particularly with respect to the ALJ's consideration of evidence in formulating Plaintiff's RFC. (*See* Doc. 19 at 12-23). In short, Plaintiff alleges that the ALJ improperly weighed the CE's opinions and failed to account for certain limitations assessed by non-examining consultants and by the community support worker. (*See id.*). Although the Court finds that the ALJ weighed the CE's opinions pursuant to appropriate legal standards and supported that weighting with substantial evidence, the Court holds that the ALJ erred in his handling of the medical opinions provided by the non-examining consultants in this case. As a result, remand is necessary.

## A.   Weighting of the CE Report

In her report, the CE found that Plaintiff suffered from moderate limitations in all assessed psychiatric abilities, except that she found a marked limitation in Plaintiff's ability to understand and remember detailed or complex instructions, a marked limitation in Plaintiff's ability to interact with the public, and a moderate-to-marked limitation in Plaintiff's ability to attend and concentrate. (AR at 454). The ALJ assigned the CE's opinion "some weight," agreeing with the moderate limitations but explicitly rejecting any greater limitations.[1] (*See id.*). In justifying this weighting, the ALJ stated that the marked limitations appeared to be "largely based on the claimant's subjective allegations" and were not consistent with the CE's examination or other "longitudinal evidence, given the claimant's intact memory and concentration." (*Id.*). Plaintiff argues that the ALJ improperly substituted his own judgment for that of the CE and that her references to the "longitudinal evidence" were too vague. (Doc. 19 at 14-16). The Commissioner argues that the ALJ largely adopted the CE's opinion, that he reasonably interpreted the evidence and reasonably discounted certain opinions expressed there, and that the weighting is not vague when the decision is read as a whole. (Doc. 24 at 7-9).

An ALJ is required to discuss the weight assigned to each medical source opinion, including that of a CE. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing, *e.g.*, 20 C.F.R. § 416.927(e)). Moreover, an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Rather,

---

[1] Plaintiff asserts that "it remains unclear if [the ALJ] accepted the [CE's finding of] 'moderate to marked' limitation in [Plaintiff's] ability to attend and concentrate." (Doc. 25 at 2). In fact, the ALJ clearly distinguished the CE's finding of moderate limitations in some abilities from his finding of greater limitations in others. (*See* AR at 19). Moreover, the ALJ's discussion of the CE's opinion was directly preceded by his greater weighting of other provider opinions finding no more than moderate limitations in this ability. (*See* AR at 18-19). On this record, it is clear that the ALJ did not accept the CE's finding of moderate-to-marked limitation in Plaintiff's ability to attend and concentrate.

an ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[2] An ALJ's failure to appropriately explain why he adopted some of a CE's restrictions but rejected others amounts to legal error. *See Haga*, 482 F.3d at 1208 (finding reversible error where it was "simply unexplained why the ALJ adopted some of the [CE's] restrictions but not others").

In unpublished caselaw, the Tenth Circuit has acknowledged that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *See Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). Moreover, "a consulting, examining physician's testimony is normally supposed to be given more weight than a consulting, non-examining physician's opinion." *Id.* at 760 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). As such, "[t]he ALJ cannot reject [a CE's] opinion *solely* for the reason that it was based on [a claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the CE]." *Id.* (citing *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)) (emphasis added). Trial courts will therefore routinely reject an ALJ's substitution of her own "lay speculation and assumptions" where an examining medical provider's contrary opinion was "supported by tests, evaluations, and reports." *See, e.g.*, *Garcia v. Berryhill*, No. CV 16-1034 CG, 2017 WL 3328184, at *4 (D.N.M. Aug. 3, 2017) (finding reversible error where ALJ assigned only "partial weight" to examining provider's opinions concerning severity of limitations and instead concluded from her own observations that claimant "appeared capable in most social situations").

---

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

On the other hand, "*Thomas* does not stand for the proposition that an ALJ cannot, in determining *what weight to assign an opinion*, consider that the opinion is based on subjective information provided by the claimant." *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (D.N.M. 2016) (citing 147 F. App'x at 759-60). "Although the ALJ cannot substitute his judgment for that of a psychiatrist, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychiatrist that discredits the subjective statements on which the psychiatrist relied." *Id.* Therefore, as long as the ALJ's weighting of a CE's opinion otherwise finds support in the record as a whole, that weighting should not be disturbed simply because the ALJ also took note of the fact that the opinion depended in part on the claimant's subjective statements. *See id.* at 888-89 (rejecting challenge to weighting of CE opinion where RFC was consistent with other medical and non-medical evidence); *see also, e.g.*, *Vigil v. Colvin*, 805 F.3d 1199, 1202-03 (10th Cir. 2015) (finding no error where ALJ considered "all of [the CE's] medical evidence, as well as the record as a whole, and gave good reasons for the weight he afforded [the CE's] opinions"); *Cindy S.C. v. Saul*, Civ. A. No. 18-1307-JWL, 2019 WL 3943065, at *7 (D. Kan. Aug. 21, 2019) ("[I]f an ALJ could not discount a medical opinion based on a fact the psychologist had already considered when formulating his opinion, that would be tantamount to taking away the Commissioner's duty to weigh the medical opinion . . . .").

Both the SSA and this Court have long recognized that an ALJ may assign a lower weight to a psychological CE's opinions if those opinions find less support in the objective evidence and are inconsistent with the overall record. *See, e.g.*, 20 C.F.R. § 416.927(c) (providing that an ALJ weighing medical evidence must consider, among other things, the "supportability" of an opinion and its "consistency" with "the record as a whole"). Thus, in *Sanchez*, the Honorable Jerry H. Ritter, United States Magistrate Judge, recently found no error

in an ALJ's assignment of "little weight" to an opinion of the same CE at issue in this case. *See Sanchez v. Saul*, CV 18-1214 JHR, 2020 WL 1236607, at *4-5 (D.N.M. Mar. 13, 2020). There, the ALJ found that the CE's opinions regarding the claimant's abilities to concentrate and attend to tasks were inconsistent with her mental status examination. *See id.* Although the claimant there also argued that the ALJ had "improperly substitut[ed] her own judgment for that of a physician," Judge Ritter recognized that:

> this argument is a nonstarter. The regulations plainly require ALJs to make judgments about the weight a medical opinion should be given and implicit in this process is the notion that an ALJ may disagree with a medical provider's conclusions. As long as the ALJ employs the regulatory factors and supports her reasoning with substantial evidence, there is nothing improper about such a result. The Court finds both of those conditions were met here, meaning the ALJ's decision to effectively reject Dr. Hughson's opinions must be affirmed.

*See id.*

Here, in addition to noting the CE's reliance on Plaintiff's subjective statements, the ALJ expressly weighed the CE's opinion against the objective findings of her examination, the "longitudinal evidence," and "the entire record." (AR at 19). Again, these are permissible matters for an ALJ to consider when weighing a medical opinion. *See Sanchez*, 2020 WL 1236607, at *4-5; 20 C.F.R. § 416.927(c). Therefore, as in *Sanchez*, the Court cannot say that the ALJ in this case applied incorrect legal standards when weighing the CE's opinion or that his weighting is unsupported by substantial evidence. *See, e.g.*, *Sanchez*, 2020 WL 1236607, at *5; *Cindy S.C.*, 2019 WL 3943065, at *7 ("[T]he ALJ did not substitute his medical judgment for that of [the CE], but he fulfilled his duty to weigh [the CE's] opinions, and he explained his bases for crediting and discounting certain aspects of those opinions.").

Plaintiff nonetheless asserts that the ALJ's references to the "longitudinal evidence" are too vague to suffice because the ALJ "did not reference any specific evidence in the record that was inconsistent with [the CE's] findings" concerning Plaintiff's purportedly marked limitations.

(*See* Doc. 19 at 15). However, the ALJ's weighting of the CE's opinions was *immediately* preceded by several paragraphs discussing the remainder of Plaintiff's medical record, including the opinions of a community support worker and two agency psychological consultants. (*See* AR at 18-19). These providers, whose opinions were all afforded "significant weight" by the ALJ, all found that Plaintiff possesses no more than moderate limitations in the relevant skills (understanding and remembering detailed instructions, attending and concentrating, and interacting with the public) for which the CE had assigned marked or moderate-to-marked limitations. (*See* AR at 85-86) (opinion of Dr. McGaughey); (*id.* at 100-01) (opinion of Dr. Drake); (*id.* at 536-37) (assessment of CSW Chapman).[3] As such, when the ALJ said that "[t]he marked limitations opined by [the CE]" were not consistent with "the longitudinal evidence" (AR at 19), it was "clear from the ALJ's overall review of the relevant medical evidence" exactly which opinions he was referring to and exactly how the ALJ found them to be inconsistent with the CE's findings. *Cf. Contreras v. Berryhill*, Civ. No. 16-920 SCY, 2018 WL 4583507, at *4 (D.N.M. Sept. 25, 2018) (remanding where ALJ implicitly rejected medical opinion without "referenc[ing] any particular medical records that were allegedly inconsistent with [the provider's] opinion"); *see also, e.g.*, *Endriss v. Astrue*, 506 F. App'x 772, 776-77 (10th Cir. 2012) (unpublished) (finding no error where, "[r]eading the ALJ's decision as a whole, " the ALJ adequately showed inconsistencies between opinion that was afforded "little weight" and other medical evidence).

---

[3] As discussed *infra*, the Court holds that remand is required due to internal inconsistencies in the reports of these providers and the ALJ's impermissible "picking and choosing" among these inconsistent opinions. However, even if the inconsistencies in these reports were fully resolved in Plaintiff's favor, it would still be the case that those providers found no more than moderate limitations in the relevant abilities. In other words, the CE's report conflicts with the longitudinal record regardless of how the internal inconsistencies within those reports might be resolved.

The ALJ weighed the CE's opinions pursuant to proper legal standards and reached a conclusion that is supported by substantial evidence. Plaintiff's arguments to the contrary are rejected.

## B.   Other Medical Opinions

In addition to the CE's report, the ALJ considered the medical opinions of two non-examining agency consultants. (AR at 19). The agency consultants, Mark McGaughey, Ph.D. and Stephen Drake, Ph.D., both assessed Plaintiff with moderate limitations in multiple abilities, including (i) his ability to maintain attention and concentration for extended periods, and (ii) his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (*See id.* at 84-86) (Dr. McGaughey); (*id.* at 100-02) (Dr. Drake). However, both consultants also opined elsewhere in their reports that Plaintiff could "attend and concentrate sufficiently to complete a routine work day without significant interruptions from [his] psychologically-based symptoms." (*Id.* at 83) (Dr. McGaughey); (*id.* at 98) (Dr. Drake).

The ALJ afforded "significant weight" to the opinions of these non-examining consultants (*see id.* at 19), and he found that Plaintiff's mental impairments result in moderate limitations in all four "Paragraph B" categories of functioning at step three (*see id.* at 15-16). Nonetheless, Plaintiff contends that the RFC adopted by the ALJ at step four fails to account for the moderate limitations found by these consultants. (*See* Doc. 19 at 16-19). The Commissioner argues that the RFC reasonably accounts for the moderate limitations recognized by these providers and that any alleged conflict between the RFC and the opinions is "not at all apparent." (Doc. 24 at 9-11). After a thorough review of the parties' arguments and the relevant law, the Court finds that Plaintiff has the better of the argument and that remand is required.

*i.   The Role of Non-Examining Consultants*

Explaining the gist of Plaintiff's arguments requires an overview of the agency disability

determination process. To begin with,

> [a]t the initial and reconsideration stages, the ultimate determination of disability
> can be made by a "medical consultant." This is a doctor who is an expert in
> evaluating claims for disability benefits. The doctor weighs the evidence in the file
> in order to make findings as to the claimant's RFC (and, ultimately, as to whether
> she is disabled and entitled to benefits). In other words, at the initial and
> reconsideration stages, the doctor himself is the adjudicator.

*Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158 (D.N.M. 2016) (internal citations omitted).

"To document their evaluations, [non-examining consultants] complete their medical

assessment forms in the electronic Claims Analysis Tool ('eCAT')." *Young v. Berryhill*, Civ. No.

16-1024 GJF, 2018 WL 840022, at *14 n.11 (D.N.M. Feb. 13, 2018). One form completed in the

eCAT is the Psychiatric Review Technique ("PRT"). *See id.* The PRT is used at steps 2 and 3 of

the SSA's five-step sequential evaluation process "to determine whether a medically

determinable mental impairment(s) is severe and, if so, whether the mental impairment(s) meets

or medically equals a listed impairment." *See* Program Operation Manual System ("POMS")

§ 24583.005(A).

At step 4 of the sequential evaluation process, the non-examining consultants use another

eCAT form, the Mental Residual Functional Capacity Assessment ("MRFCA"), to assess the

claimant's mental RFC. *See e.g.*, *Young*, 2018 WL 840022, at *14 n.11; POMS

§ 24510.060(A)(1). The Court turns to the thorough discussion provided by the Honorable

Stephan M. Vidmar, United States Magistrate Judge, to describe this process:

> The POMS explains that in order "[t]o assure a comprehensive assessment of
> mental RFC, the [MRFCA form] requires the [doctor] to first record preliminary
> conclusions about the effect of the impairment(s) on each of four general areas of
> mental function [in Section I,] then to prepare a narrative statement of mental RFC
> [in Section III]." For example, a claimant is "'Moderately Limited' when the
> evidence supports the conclusion that the individual's capacity to perform the

activity is impaired." When the doctor finds a claimant moderately limited in a certain area, "[t]he degree and extent of the capacity or limitation must be described in a narrative format in Section III." "Section III is for recording the formal narrative mental RFC assessment and provides for the [doctor] to prepare a narrative statement for each of the subsections (A through D) in [S]ection I." In other words, the doctor must incorporate all of his Section I findings into his Section III narrative RFC assessment.

At the stages that the doctor makes these RFC findings, *i.e.*, at the initial and reconsideration stages, his RFC findings are *not* evidence. The MRFCA form, which contains his RFC findings, is not evidence; rather, it is a decision. The POMS expressly clarifies that when the doctor is acting as an adjudicator (i.e., at the initial and reconsideration stages), his "findings are not opinion evidence, but are formal determinations based on weighing of all the evidence[.]"

Later in the administrative process, however, if the case comes before an ALJ, the nature of the MRFCA form changes. At the ALJ stage, the doctor's MRFCA form is no longer the adjudication of the case; rather it *becomes* evidence that the ALJ must consider in making her own new, independent findings. The ALJ considers the doctor's MRFCA form along with all of the other evidence in the file. This MRFCA form has been completed by a doctor, acting as an adjudicator, at an earlier administrative stage. Because that doctor never examined the claimant, ALJs (and courts) refer to him as the "nonexamining physician" and refer to his report as the "nonexamining opinion." In other words, when the case percolates up to an ALJ, the findings on the MRFCA form change from an adjudication of the claim to a "nonexamining opinion" about the claim.

At the ALJ-stage (and thereafter) the *entire* MRFCA form—all of the findings on the MRFCA form—is considered the doctor's "opinion." The distinction between Section I and Section III, which was meaningful for the physician adjudicator, has little to no bearing on how the ALJ must weigh the MRFCA report. Appreciating the administrative context in which the MRFCA form is generated is helpful because it clarifies that the POMS' distinction between Section I and Section III is aimed at the doctors who complete the forms, not at the ALJs.

*Silva*, 203 F. Supp. 3d at 1159-60 (internal citations omitted) (underlined emphasis added).

To summarize, "the PRT has overall ratings for various categories, including maintaining concentration, persistence, or pace, while the MRFCA has more focused categories for use in determining RFC." *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013) (unpublished). But in any event, these materials all constitute medical evidence at "the ALJ-stage," and must be considered as such by the ALJ. *See, e.g.*, *Silva*, 203 F. Supp. 3d at 1159-60.

*ii.   The Non-Examining Consultants' References to PRT Narratives Do Not Require Remand*

Plaintiff's first point of contention concerns the manner in which Dr. McCaughey and Dr. Drake recorded his alleged mental RFC. The POMS directs a non-examining consultant to record "the actual mental RFC assessment" in narrative format in Section III of the MRFCA, "explaining the conclusions indicated in [S]ection I." POMS § 24510.060(B)(4). However, for the narrative portions of the MRFCA, Dr. McCaughey simply directed the reader to "see PRT" (*see* AR at 85-86), while Dr. Drake included the same directive but provided somewhat more additional detail (*see id.* at 100-02). Although both Dr. McCaughey and Dr. Drake included extensive narratives in the PRT portion of their eCAT forms, Plaintiff appears to argue that the ALJ's reliance on those narratives is error since "limitations assessed as part of a PRT are not to be considered as limitations with respect to an MRFCA." (*See* Doc. 19 at 18).

While Dr. McCaughey and Dr. Drake may not have fully followed the internal procedures set forth in the POMS, this error does not require reversal. The provisions of the POMS "are not binding and do not create enforceable rights." *Jimenez v. Astrue*, CIV 08-0817 KBM, 2009 WL 10708193, at *7 (D.N.M. May 14, 2009); *see also, e.g.*, *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (noting that an internal SSA manual "has no legal force, and it does not bind the SSA"); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (unpublished) (citing, *e.g.*, *Schweiker*, 450 U.S. at 789) (holding that POMS "lack the force of law and create no judicially-enforceable rights"); *Marelli v. Astrue*, No. 2:0-CV-666-DB, 2010 WL 2696636, at *4 (D. Utah July 7, 2010) (quoting *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007)) ("Internal agency documents, like the POMS, 'do not create judicially enforceable duties, and [courts] will not review allegations of noncompliance with their provisions.'"). Although Plaintiff cites several decisions addressing the distinction between a PRT and the MRFCA (*see*

Doc. 19 at 18), none of these decisions held that remand was required based simply on a non-examining consultant's reference to the PRT in his Section III narrative. *See Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished); *Lull*, 535 F. App'x at 685-86; *cf. Milner v. Berryhill*, Civ. No. 16-1050 GJF, 2018 WL 461095, at *12 (D.N.M. Jan. 18, 2018) (finding that MRFCA reference to PRT "creates problems," but reversing only due to "internal inconsistency of [consultant's] opinion").

Moreover, the ALJ did not err in evaluating and relying upon the narratives included in the PRTs filled out by Dr. McCaughey and Dr. Drake. This Court has repeatedly recognized that an ALJ formulating an RFC may consider the *entirety* of a non-examining consultant's opinions, not just those passages expressly included in Section III of an MRFCA, since "[a]ll evidence from nonexamining sources is opinion evidence." *See, e.g.*, *Jacquez v. Berryhill*, No. 16-cv-1399 SMV, 2017 WL 5989197, at *4 (D.N.M. Dec. 1, 2017) (quoting *Silva*, 203 F. Supp. 3d at 1160-61); *see also* 20 C.F.R. § 416.927(a), (b) (noting that *any* "statements from acceptable medical sources" concerning "the nature and severity of your impairment(s)" are considered to be "medical opinions," and directing the SSA to "always consider the medical opinions in your case" when determining whether a claimant is disabled). In this case, both Dr. McCaughey and Dr. Drake extensively discussed Plaintiff's limitations in the PRT, and they explicitly referred to their PRT narratives in Section III of the MRFCA. Because *all* of this information was valid opinion evidence, the ALJ did not err in evaluating and considering the PRT narratives when formulating Plaintiff's RFC.

*iii.    The ALJ's Reliance on the Consultants' Inconsistent Findings Requires Remand*

Plaintiff's core allegation is that certain "moderate" limitations that the non-examining consultants found in Section I are inconsistent with both the limitations described in their Section

III narratives (including the incorporated PRT narratives) and the RFC assigned by the ALJ. (*See*

Doc. 19 at 18-19). Plaintiff points to the following alleged inconsistencies:

(1) In Section I, Dr. McGaughey opined that Plaintiff has moderate limitations in his ability to maintain attention and concentration for extended periods. (AR at 85). In his PRT narrative, though, Dr. McGaughey stated that Plaintiff has the ability to "attend and concentrate sufficiently to complete a routine work day." (*Id.* at 83).

(2) Similarly, Dr. Drake opined in Section I that Plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods. (*See id.* at 101). In his Section III narrative, however, Dr. Drake stated that Plaintiff "retains the ability, on a sustained basis, to . . . maintain concentration and attention for extended periods." (*See id.*).

(3) In Section I, Dr. McGaughey found that Plaintiff has moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 85). In his PRT, Dr. McGaughey opined that Plaintiff could "complete a routine work day without significant interruptions from psychologically-based symptoms." (*Id.* at 83).

(4) At Section I, Dr. Drake also found moderate limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from his symptoms and without an unreasonable number and length of breaks. (*See id.* at 101). Although Dr. Drake's narratives did not expressly come to the opposite conclusion (*see, e.g.*, *id.*), his Section III narrative also incorporated the PRT narrative filled out by Dr. McGaughey, which appeared to find no limitations in this ability (*see id.* at 98).

The ALJ ultimately described the opinions of Dr. McGaughey and Dr. Drake in a manner

consistent with their Section III narratives, finding that the consultants had reported that Plaintiff

was capable of "attending and concentrating sufficiently to complete a routine workday without

significant interruptions from psychologically-based symptoms." (AR at 19). The ALJ did not

address the consultants' relevant Section I findings of moderate limitations when formulating

Plaintiff's RFC. (*See id.*). Nonetheless, the ALJ afforded the consultants' opinions "significant

weight." (*Id.*) Plaintiff argues that the consultants' findings are contradictory and, consequently,

cannot amount to substantial evidence. (*See* Doc. 19 at 19). Plaintiff also argues that the ALJ's

reliance on only the less-restrictive aspects of the consultants' RFC findings, without addressing "all of the moderate limitations in their assessment[s]," was legal error. (*See id.*).

In support of his argument, Plaintiff primarily points to the decision of the Honorable Gregory J. Fouratt, United States Magistrate Judge, in *Milner*. *See* 2018 WL 461095, at *12. In that decision, a non-examining consultant found in his PRT narrative (which was incorporated into Section III) that the claimant could, among other things, "attend and concentrate for two hours at a time." *See id.* However, in his Section I findings, the consultant also assessed moderate limitations in the claimant's ability to attend and concentrate for two hours at a time. *See id.* As Judge Fouratt held, the consultant's opinion could not serve as substantial evidence to support the ALJ's assessment of the claimant's RFC because these competing findings (among other similar examples) were "entirely inconsistent." *See id.*; *see also id.* at *15 (holding that consultant's failure to explain in Section III the moderate limitations he found in Section I "meant that the ALJ should not have relied upon [his] mental RFC assessment because it was not substantial evidence").

*Milner* and similar cases persuasively establish the principle that a "moderate" limitation is not the same as no limitation at all. As Judge Fouratt notes, SSA policies and procedures state that a "moderate" limitation exists when "the individual's capacity to perform the activity is impaired." *See id.* (quoting POMS § 24510.063(B)(2)); *see also, e.g.*, *Silva*, 203 F. Supp. 3d at 1159 (quoting POMS § 24510.063(B)). The Tenth Circuit has been even more clear: "a moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Thus, on their face, the non-examining consultants' opinions are internally inconsistent insofar as their Section III narratives describe *no* limitations in areas where they found Plaintiff to be *moderately* impaired in Section I. The next question, then, is whether these inconsistencies require reversal.

17

The Commissioner argues that any inconsistencies here are irrelevant because, unlike in *Milner*, Plaintiff's RFC accounts for the *stricter* of these limitations, *i.e.*, the moderate limitations. (*See* Doc. 24 at 10-11); *cf. Milner*, 2018 WL 461095, at *13. As the Commissioner notes, the Tenth Circuit has held that "an [ALJ] can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil*, 805 F.3d at 1204). According to the Commissioner, the RFC restricting Plaintiff to "simple, routine tasks" and "simple work-related decisions" effectively amounts to an RFC of "unskilled work" that necessarily incorporates the moderate limitations assessed by Dr. McGaughey and Dr. Drake. (*See* Doc. 24 at 10-11) (citing, *e.g.*, 20 C.F.R. § 416.968(a) and SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)); (*cf.* AR at 21) (observing that Plaintiff's "past relevant work is unskilled").

The Commissioner particularly highlights the Tenth Circuit's unpublished decision in *Nelson*, in which the court held that the ALJ's purported failure to expressly account for certain limitations in a claimant's RFC was not reversible error. *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (unpublished). The claimant in *Nelson* alleged that her RFC improperly failed to account for a non-examining consultant's findings of marked limitations in handling detailed instructions and moderate limitations in maintaining attention and concentration for extended periods. *See id.* at 628-29. The RFC itself provided that the claimant could carry out only simple instructions with routine supervision, interact appropriately with supervisors and co-workers, and adapt to work situations. See *id.* at 629. As the Tenth Circuit recognized, this RFC essentially amounted to an RFC for "unskilled work," which under SSA policies and procedures requires a claimant to understand, remember, and carry out only "simple instructions"; make only "simple work-related decisions"; respond "appropriately" to supervision, co-workers, and

work situations; and "deal with changes in a routine work setting." *See id.* (quoting SSR 96-9p, 1996 WL 374185, at \*9 (July 2, 1996)). Since an RFC for unskilled work did not require an ability to remember or carry out detailed instructions, the Tenth Circuit held that the claimant's marked limitations in those abilities did not prevent her from performing unskilled work. *See id.* Similarly, the court held that the claimant's moderate limitations in maintaining attention and concentration for extended periods were necessarily incorporated into her RFC for unskilled work, which does not measurably require that ability. *Id.*; *see also* POMS § 25020.010(B)(3) (noting that while ability to *maintain attention* for extended periods is "critical for performing unskilled work," an ability to *concentrate* for extended periods "is not critical").

Here, similar to the RFC in *Nelson*, Plaintiff's RFC requires the handling of only "simple, routine tasks," "simple work-related decisions," and occasional interactions with "supervisors, coworkers, and the public." (AR at 16). Admittedly, the RFC in this case also includes two additional provisions: that Plaintiff could "tolerate *few changes* in a routine work setting," and that his "time off-task [could] be accommodated by *normal breaks*." (*Id.*) (emphasis added). However, these provisions are also consistent with an RFC for unskilled work, which requires a claimant to "respond appropriately to changes in a (routine) work setting" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." POMS § 25020.010(B)(3). As a consequence, the Commissioner correctly interprets the RFC assigned to Plaintiff as one for unskilled work. And as *Nelson* persuasively holds, even moderate limitations in Plaintiff's ability to maintain attention and concentrate for extended periods are not inconsistent with that RFC. *See Nelson*, 655 F. App'x at 629.

The complication, though, is that the Section I opinions of Dr. McGaughey and Dr. Drake also included a finding of moderate limitations in Plaintiff's ability to complete a normal workday without interruptions from his psychologically based symptoms on a normal break schedule. (*See* AR at 84-85, 101-02). Neither *Nelson* nor any other decision cited by the Commissioner has held that a moderate limitation in that ability is consistent with an RFC for unskilled work. In fact, SSA policies are clear that if a claimant is to perform unskilled work, the requirement that he be able to complete a normal workday without interruptions from his psychologically based symptoms and perform at a consistent pace on a normal break schedule is "usually strict." *See* POMS § 25020.010(B)(3). Therefore, if Plaintiff does possess a moderate limitation in this ability, that would necessarily conflict with the ALJ's conclusion that he possesses an RFC for unskilled work. Unfortunately, the non-examining consultants' opinions are internally inconsistent as to whether such a limitation exists.

Under these facts, the ALJ's reliance on the non-examining consultants' medical opinions results in reversible error twice over. First, as previously discussed, the reports of Dr. McGaughey and Dr. Drake are internally inconsistent in that that their Section I findings set forth a moderate impairment in Plaintiff's ability to complete a normal workday without interruptions from his psychologically based symptoms and to perform at a consistent pace on a normal break schedule, whereas their Section III narratives describe no impairment whatsoever as to this ability. As in *Milner*, the consultants "found that Plaintiff had moderate limitations, yet did not discuss them, and rendered a mental RFC that assumed that those limitations did not exist." *See Milner*, 2018 WL 461095, at *12. As Judge Fouratt persuasively held in *Milner*, a medical opinion with this level of internal inconsistency "cannot be substantial evidence that supports the ALJ's assessment of Plaintiff's RFC." *See id.* (citing *Langley v. Barnhart*, 373 F.3d 1116, 1118

(10th Cir. 2004), and *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004)) (discussing substantial-evidence standard). Because he nonetheless treated these contradictory opinions as substantial evidence supporting his assessment of Plaintiff's RFC (*see* AR at 19), the ALJ committed reversible error.

Second, the ALJ's unexplained disregard of the portions of the consultants' medical opinions supporting a finding of disability, despite affording those opinions "significant weight," amounts to an impermissible picking and choosing of evidence. Certainly "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," since "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Still, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Id.* at 1292 (quoting *Haga*, 482 F.3d at 1208). This principle is just as true for a non-examining consultant's medical opinions as it is for evidence from treating physicians. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007). Further, an ALJ's failure to discuss significantly probative evidence that he rejects amounts to legal error requiring remand. *See, e.g.*, *id.* at 1303 (citing *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).

In *Milner*, the ALJ did not specifically assign weight to the opinions of Dr. McGaughey or another non-examining consultant; nor did he address those consultants' Section I findings of moderate limitations in, among other things, the claimant's ability to complete a workday without the interruption of psychologically based symptoms and without an unreasonable number and length of breaks. *See Milner*, 2018 WL 461095, at *4, *15. However, the ALJ did

effectively adopt an "unskilled work" RFC that was consistent with the portions of the consultants' opinions finding that Plaintiff did *not* possess these moderate limitations. *See id.* at *15. As Judge Fouratt recognized, the Tenth Circuit has not held that moderate limitations in these abilities may be collapsed into an RFC of unskilled work. *See id.* Indeed, internal SSA policies provide otherwise. *See* POMS § 25020.010(B)(3) (holding that the ability to complete a workday without interruptions of symptoms is usually a "strict" requirement when a claimant has an RFC for unskilled work). "The ALJ, therefore, [could not] collapse these limitations in Plaintiff's RFC into a single type of work—in this case, sedentary, unskilled work—in order to implicitly account for them." *See Milner*, 2018 WL 461095, at *15; *see also Vigil*, 805 F.3d at 1204 (citing *Chapo*, 682 F.3d at 1290 n.3) (warning that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations"). As such, Judge Fouratt held that the ALJ should have "accounted for [the consultants'] moderate limitations of Plaintiff . . . either by rejecting them and explaining that rejection, or by adopting them in the RFC." *See id.*

Judge Fouratt's persuasive reasoning applies with added force in this case, where the ALJ *explicitly* assigned "significant weight" to the opinions of Dr. McGaughey and Dr. Drake. (*See* AR at 19). Despite this weighting, the ALJ here—like the ALJ in *Milner*—ignored the consultants' Section I opinions finding "moderate" limitations in Plaintiff's ability to complete a normal workday without interruptions from his symptoms and without an unreasonable number and length of breaks, while effectively adopting their Section III opinions to the contrary. (*See* AR at 16) (including RFC provision that "time off-task can be accommodated by normal breaks"); (*id.* at 19) (finding no relevant limitations in this ability); *cf. Milner*, 2018 WL 461095,

at *15-16. In short, the ALJ effectively "rejected [the consultants'] restrictions, without explanation, while simultaneously adopting their opinions." *See id.* at *16.

The ALJ therefore engaged in improper picking-and-choosing of the consultants' medical opinions without explaining his basis for rejecting the probative findings supporting Plaintiff's claim of disability. *See, e.g.*, *Chapo*, 682 F.3d at 1292 (citing *Haga*, 482 F.3d at 1208); SSR 96-5p, 1996 WL 374183, at *5; *see also Milner*, 2018 WL 461095, at *16 ("It is the lack of adequate explanation here, in addition to the failure to account for the limitations set forth by both [non-examining consultants], whose opinions the ALJ otherwise forthrightly accepted, that requires remand."). Accordingly, Plaintiff's motion is due to be granted, and this matter must be remanded so that the ALJ may properly address the non-examining consultants' opinions.

### C.   Community Support Worker

Plaintiff also argues that the ALJ failed to properly account for certain moderate limitations assessed by Amy Chapman, a community support worker who met with Plaintiff multiple times. (*See* Doc. 19 at 20-23). Because the Court finds that remand is required on other grounds, this argument is not addressed in detail. However, the ALJ shall ensure on remand that all opinion evidence, including the opinions of non-medical sources, is considered in a manner consistent with SSA regulations and policies. *See, e.g.*, 20 C.F.R. § 416.927(f).

**V. CONCLUSION**

The ALJ erred in his review of Plaintiff's application for disability benefits by relying on inconsistent medical evidence in support of his findings and by failing to appropriately account for the probative medical evidence that he rejected. Accordingly, Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 19) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**